We'll hear the first case on calendar, Brutton v. United States. Good morning. Good morning. Good morning. May it please the court. This is an appeal from two orders by Magistrate Judge Fox. One, a motion in limine precluding or limiting the testimony of Dr. Sebastian Latuga, a plaintiff's treating physician, as well as a ruling pursuant to Federal Rules Civil Procedure 52C on the issue of partial findings, a judgment on the partial findings. I'd like to address the 52C argument first. Simply put, plaintiff was not fully heard on the issue that rendered the decision on the 52C decision. At the time the decision was made by Magistrate Judge Fox, the only evidence in the record regarding causation was the testimony of Dr. Latuga, who causally related plaintiff's injuries and her surgery to the October 20, 2012 car accident. The issue that arose during the trial and is spelled out in the oral argument that took place at the trial, that is part of the record and also- Excuse me, when the motion was made under Rule 52C, what, if anything, did you say by way of an objection on the question of whether you'd been fully heard? And at what page of the record will I find that? Your Honor, the issue with that is that they were relying on Dr. Moldover's affidavit in their application. And I specifically- Who was relying on it? Well, the court and defendant's argument. And in fact, Magistrate Judge Fox expressed some reservation about the timing of the motion based on prematurity. Because if a reliance was made on Judge Moldover, I'm sorry, a reliance was made on Dr. Moldover's affidavit, as was alluded to. Then he had not had an opportunity, or plaintiff had not had an opportunity to cross-examine Dr. Moldover. Well, did you make that point? Yes. Where? It would be A172, Your Honor. The court had asked if the plaintiff wanted to be heard on the application. I myself was the one who answered, and I said, I think both applications by the governor are premature. There was a reference by Mr. Dietz regarding the testimony or the conclusions that were made by the government's witness, who is yet to be cross-examined. And did Judge Fox rely on that? That is, rely on Moldover's testimony? Well, Your Honor, that's the rub here a little bit. If he didn't, then the cases that he relied on, Valentin and Freeman, are misplaced. Because both of those cases, which are New York State law cases, the substantive law in the case, involve the defendant's witness or the defendant's expert citing a possible alternative cause as towards what may have been plaintiff's injuries. Here, at the point of this, there was not an evidence. So my argument is either- But it was in the hospital records, the medical records, that were in evidence, right? That's correct. However, but there's obviously the argument related to the hospital record is one that Dr. Letuga reviewed it, and he still maintained that the causality was to the October 20th car accident. But he didn't say a word to exclude the falling tile incident as the cause or a cause. But if he has reviewed that record and he maintains his causality argument to the car accident, I think it's- He was not aware of that record at the time he treated the plaintiff. Well, our argument, Your Honor, is that Dr. Letuga's treatment was ongoing. And he states so during court testimony during the trial. And that the review of the records took place still during the treatment. If the causality doesn't, if what- Where did he say his treatment was ongoing? If the appendix of the appellant, Your Honor, A163. That would be lines 21 through 24 of the trial transcript. Doctor, are you still seeing this patient? Yes, the patient is still my patient. Does she still require- But did he say that I've reviewed the medical records, I'm aware of the falling tile incident. And I reached an opinion in the course of the continuing treatment. And the opinion is that the automobile accident was the cause of the problem and not the falling tile. Did he say that? No specific words were not said, Your Honor. Well, nothing remotely like them were said. Well, he was asked about the hospital records from the defense counsel during cross-examination. And he maintained his position that the car accident was the cause- What are you referring to? Well, it's two separate sections. It's the two questions that occurred towards the end of his cross-examination on, I'm sorry, on redirect, when he indicated that he found these herniated discs to be causally related to the accident. And that is on page 100, Your Honor. I'm sorry, A169 of the appendix. I'm sorry, 16- Nine. And that's lines three through 11. And did he offer any evidence that it was not attributable to the alternative cause and what the basis for his opinion that it was not related? Well, I think that goes hand in hand with the hypothetical ruling. And he was asked, or an attempt was made to ask a question to the doctor that we think was within the area of his training that was objected to and that would have separated the symptomology that Ms. Bruton had for a herniated disc from the ceiling tile and from the- You had like an infinite number of opportunities at trial. Well- Before trial, to make an offer of proof that if permitted to respond, Dr. Luttuga would have said that in the course of his treatment he became aware of the falling tile incident, notwithstanding that your client didn't tell him the truth when he took the history. And that he was of the opinion that that was not a causal factor and given a reason for that. But there was no such offer of proof. Isn't that true? That is true, Your Honor. It was attempted to be elicited during the trial. And why isn't that fatal to your argument? Well, for two reasons. Any prior occurrence, no matter how inconsequential, to have a burden that would wind up with dismissal on a plaintiff for failing to mention that, in this case, would be an increased burden on burden of proof. Didn't Dr. Luttuga say that something falling on our head could indeed cause such an injury? Absolutely. But that question was not specified. Your Honor, that question was not specified as towards this particular plaintiff. And any type of thing, many different things could cause the herniation. Our argument was that for Magistrate Judge Fox not to hear from the plaintiff as part of not being fully heard on the issue. To explain, this was an inconsequential thing. She had no radiological testing. She was not admitted to the hospital. No procedures were done. She had no further treatment. And in fact, the discharge papers from the hospital, from the sealant tile incident, say follow up in one week's time if pain persists, which she obviously did not. I think that- We don't know if the pain persisted, do we? Because if the pain that she was complaining of following the taxi accident is the pain that's associated with the falling tile. And your evidence did not rule that out, as was your burden to do, then we don't know whether the cause of her pain was the taxi accident or the falling tile. Well, I think that's established, Your Honor, in Dr. Latuge's initial evaluation, where Ms. Bruton says she had no pain prior to this occurrence. So I think that would be, we know the pain had ceased as a result of anything related to the sealant tile incident. And accordingly- Was that in his witness statement, what you're referring to? No, it was in his medical records of current evidence. In his medical records. So in other words, you rely for the proposition that there was no pain prior to the incident on the self-serving account of your client, who just managed to leave out of the medical history that some weeks before a ceiling had collapsed on her head, just forgot that. Well, I don't think it's, I don't want to debate the issue of whether she forgot it. Obviously, I think it was- I was being generous. I think it was an issue of inconsequence for her, Your Honor, and that's why it was not mentioned. I think I'd remember if the ceiling fell on my head. Absolutely, but I think that if there was symptomology related with it at that point, it would not be relevant. I vividly remember the day I first sat on this court many years ago with Judge Newman, and the chair suddenly collapsed under me. I've never forgotten it. I suspect Judge Newman hasn't either. Well, luckily you haven't brought a lawsuit related to that, a workers' comp claim, and that way it didn't come up. But I'm out of time. Thank you, Your Honors. May it please the court, Peter Aronoff, U.S. Attorney's Office, Southern District of New York, for the government. I have a few points in response to plaintiff's arguments. First, plaintiff argues that Magistrate Judge Fox made an error by relying on Dr. David was not yet in evidence. But the part of the record, the part of the trial transcript that plaintiff points to, it's on Plaintiff's Appendix 186. It's true that Judge Fox did acknowledge that this was a potential problem. But the entire record reveals that he was aware of this problem, and then avoided the potential error. Because his actual ruling on the government's motions at Appendix 188 through, excuse me, 192, does not actually rely at all on Dr. Moldover's testimony. So it might have been an error if he had relied on testimony that was not in evidence, but that's not what Judge Fox actually did. Also on the point of whether the plaintiffs could be put to their burden without first having any expert testimony from the government. If you take a look at the Carter versus Fulserve case from the first department, it's in our brief. That is a case where it's a review after trial of a no fault car accident claim. And the court found that the plaintiff's evidence on its own, without any evidence from the defendant, already failed to meet the plaintiff's burden. So there is precedent in New York for not relying on any defendant's evidence at all. And just on one other quick point, if you take a look at the records from St. Luke's Roosevelt, which are in the defendant's appendix, starting at page 169, those records demonstrate that the plaintiff herself when she first reported to the St. Luke's emergency room immediately after the car accident, she was asked the question of when did her pain begin, and she reported when a ceiling fell on her head several weeks before. So I think the court did not make any kind of clear error when it found that the plaintiff's testimony on this point was not additional probative evidence. That specific question about whether the plaintiff had been fully heard is reviewed only for abuse of discretion. There's a Fourth Circuit case that we cite in our brief that makes that point. And so I don't think it could be held to be an abuse of discretion for the court to have so found. Let's- Do you view that we could resolve the evidentiary point in this case simply on the ground that it was not preserved given the failure of any offer of proof as to what Dr. Latuga would have said? I suppose that would be a ground to resolve the case on. I think that the plaintiff may not have made such a clear objection on that precise ground. But the plaintiff did at least attempt to induce testimony from Dr. Latuga on this point. I mean, I think the better course, I agree with Your Honor, would have been to attempt to make an offer of proof and then have the district court revisit its ruling on the motion to eliminate at that time. But isn't it fatal? I mean, the fact that you ask the question and you get an objection sustained, and then you go on under Rule 103, isn't that the end of the evidentiary ruling, absent plain error? I suppose that's correct, Your Honor, yes. Unless the court has any further questions, we can rest on our papers. Thank you. Good morning. I'm Marjorie Borns, and I have the other defendants' appellees. I don't believe there are any questions from the court, so I really don't want to belabor anything. So unless you have questions, I'm going to rest on what was in our briefs, especially as to the questions of serious injury under the state law, which I think was covered in the brief very fully. And I have no other thing to add, unless you have questions. Thank you for coming. We have no questions. We'll hear Roberto. Your Honors, just to address two points brought up by Mr. Aronoff. First, regarding Dr. Moldover, if Mr. Aronoff is correct in his assessment that Dr. Moldover's affidavit or affirmation was left out of the decision making of Magistrate Judge Fox, then his reliance on Valentin is misplaced. Valentin, there was a possible alternative cause that was based on medical evidence by the defendant's doctor in that case. That was not included in the record at the time that this decision was made. So accordingly, the presumption has not been shifted to the point- What wasn't included in the record? A doctor diagnosing a particular circumstance or a particular alternative cause as the cause of plaintiff's injuries. In Valentin, they had diagnosed degeneration for the plaintiff as the cause, and then plaintiff failed to rebut that. I also think, just with regard to the plain error of rule 103, on the plaintiff's appendix 159, Mr. Gorska clearly attempts to ask a question about tingling or numbness that would have been within the training of the plaintiff. And that objection was sustained, and that prevented plaintiff from being able to- An appropriately diligent trial lawyer does at that point is to say, Your Honor, I'd like to make an offer of proof. And you go to the sidebar and say, my offer is that if permitted to answer the question, the witness would have said X. And under rule 103, the fact that it wasn't done means it's gone unless the ruling was plain error. Thank you, Your Honor. Thank you all. We'll reserve decision.